UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Patricia Hughes

   v.                                              Civil No. 11-cv-516-SM

Southern New Hampshire
Services, Inc.


**O R D E R**

In a case that has been removed from the New Hampshire Superior Court and over which this court has federal-question jurisdiction, see 28 U.S.C. § 1331, Patricia Hughes has sued her former employer, Southern New Hampshire Services, Inc. ("SNHS"). She states claims under both federal and state law, generally asserting that she was discriminated against on account of her type-one diabetes. Before the court is SNHS's motion to compel Hughes to produce all of her communications with the American Diabetes Association ("ADA"). Hughes objects. For the reasons that follow, SNHS's motion to compel is denied.

**Background**

In her complaint, Hughes alleges that she has type-one diabetes, and that her condition requires her to eat certain kinds of food, on a particular schedule, to avoid various symptoms of her diabetes. The basic thrust of her claims is

that SNHS, as her employer, failed to provide her with a reasonable accommodation for her condition and terminated her employment as a result of it.

At her deposition, Hughes indicated that before she filed a complaint with the New Hampshire Commission for Human Rights ("HRC"), she had contacted the ADA. Specifically, she said that she exchanged e-mails with the ADA's Kathleen Gordon regarding "diabetics and the law" and "her rights as a diabetic." Def.'s Reply, Ex. 1 (doc. no. 27-1), at 2. She further testified that Attorney Gordon proofread a four-page narrative, which, presumably, was a part of either an HRC complaint or a document prepared for submission to the Equal Employment Opportunity Commission ("EEOC"). In a subsequent affidavit, Hughes testified that: (1) "Attorney Katherine Gordon[1] . . . provided . . . her mental impressions and opinions on how [she] should draft the Charge of Discrimination to be filed with the EEOC," Pl.'s Obj., Ex. 3 (doc. no. 24-4) ¶ 2; (2) she was told that all of her communications with Attorney Gordon would be confidential, see id. ¶ 3; and (3) she has not waived any privilege that may attach to her communications with Attorney Gordon, see id. ¶ 7.

---

[1] At her deposition, Hughes referred to Attorney Gordon as Kathleen, but, in her affidavit, referred to her as Katherine. The court simply repeats that usage here, as it has no way of knowing Attorney Gordon's actual first name.

Hughes initiated her contact with the ADA in response to a website that explains, among other things:

> If you are being discriminated against because of your diabetes at work . . . you can request assistance from the American Diabetes Association.
>
> . . . .
>
> . . . A representative from the ADA's Center for Information and Community Support will send you a packet of information and a form to request help from one of the ADA's legal advocates.
>
> . . . .
>
> When you send in a form requesting help from a legal advocate, you can expect to receive information and assistance from a lawyer specializing in diabetes discrimination issues. Although all our legal advocates are licensed attorneys, they are not able to represent you and speaking with a legal advocate will not create a client-attorney relationship.
>
> The legal advocate you speak with will provide you with information about your legal rights, provide strategies for exercising your rights, give you tools to use to advocate for yourself and negotiate a resolution of your problem, and where necessary and appropriate, guide you through the applicable legal process. . . .
>
> . . . .
>
> All information you provide to us, including the fact that you contacted us about a discrimination matter, is treated confidentially and not shared outside of legal advocacy staff unless you give us explicit permission to talk to other about your case.

Def.'s Mot. to Compel, Ex. 1 (doc. no. 22-1), at 1.

After Hughes gave deposition testimony about her contact with Attorney Gordon, who was acting in her capacity as an ADA

legal advocate, SNHS asked Hughes to produce her communications with the ADA. She has declined to do so, asserting attorney-client privilege.

SNHS now moves for an order compelling Hughes "to produce all [of her] communications with the ADA," Def.'s Mot. to Compel (doc. no. 22), at 4, which necessarily includes her communications with her ADA legal advocate. But, SNHS has not complied with the local rules of this district, under which it was obligated to "include, in [its] motion itself or in an attached memorandum, a verbatim recitation of each interrogatory, request, answer, response, and objection, or a copy of the actual discovery document which is the subject of the motion." LR 37.1(a).

## Discussion

"Unless otherwise limited by court order, the scope of discovery . . . [extends to] any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure ("Federal Rules") permit a party to "move for an order compelling disclosure or discovery," Fed. R. Civ. P. 37(a)(1), so long as "[t]he motion . . . includes[s] a

4

certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," id.

Here, SNHS seeks to compel the production of communications between Hughes and an ADA legal advocate which, in Hughes' view, are protected by the attorney client-privilege.  The court of appeals for this circuit has recently described the procedural mechanics governing the invocation of the attorney-client privilege:

> It is clear beyond hope of contradiction that the party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived.  See In re Keeper of the Records [(Grand Jury Subpoena Addressed to XYX Corp.)], 348 F.3d [16,] 22 [(1st Cir. 2003)].  Whatever quantum of proof is necessary to satisfy this obligation, a blanket assertion of privilege is generally insufficient.  See In re Grand Jury Proceedings, 616 F.3d 1172, 1183 (10th Cir. 2010); In re Grand Jury Matters, 751 F.2d 13, 17 n.4 (1st Cir. 1984); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983).  Determining whether documents are privileged demands a highly fact-specific analysis — one that most often requires the party seeking to validate a claim of privilege to do so document by document.  In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000); In re Grand Jury Matters, 751 F.2d at 17 n.4.

In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 71 (1st Cir. 2011).  The court's characterization of the specificity required

to assert the attorney-client privilege is rooted in the Federal Rules which provide, in pertinent part:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Based on the submissions before it, the court has no way of ascertaining whether Hughes' invocation of the attorney-client privilege meets the standard required by Rule 26(b)(5)(A). But, there is a good reason for that: SNHS's failure to provide either the discovery request at issue, or Hughes' response thereto, as required by LR 37.1(a). While Hughes does not rely upon LR 37.1(a) in her objection to SNHS's motion to compel, the court cannot quite so easily move to the merits of this dispute. In an opinion from the Seventh Circuit that was recently cited by the First Circuit, the court noted:

> Only when the district court has been exposed to the contested documents and the specific facts which support a finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies. See In re Walsh, 623 F.2d [489,] 493 [7th Cir. 1980)]. Any attempt to

6

> make this type of determination without this factual foundation amounts to nothing more than a waste of judicial time and resources. Cf. [United States v.] Kis, 658 F.2d [526,] 540 [(7th Cir. 1981)].

Holifield v. United States, 909 F.2d 201, 204 (7th Cir. 1990) (quoted in Mr. S., 662 F.3d at 71). The Holifield court's concern was with a lack of specificity engendered by a blanket assertion of privilege. See 909 F.2d at 204. But, its caution against deciding questions concerning attorney-client privilege without the benefit of specific facts seems also to counsel in favor of denying SNHS's motion to compel where, as in this district, a party moving to compel discovery is charged with the responsibility of exposing the court to the basic facts surrounding the discovery dispute. That is, when a party moving to compel fails to comply with LR 37.1(a), the court has no way of knowing whether the party resisting discovery has adequately asserted a legal basis for its resistance, such as the attorney-client privilege.

The bottom line is this. "The attorney-client privilege is the most venerable of the safeguards afforded to confidential communications and is enshrined as such in the federal common law." Mr. S., 662 F.3d at 70 (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). At the same time, however, "the cloak of confidentiality has costs as well as benefits, and courts must take care to construe this privilege narrowly." Mr.

7

S., 662 F.3d at 71 (citing In Re Keeper of the Records, 348 F.3d at 22). Without the information required by LR 37.1(a), the court is in no position to do a proper job of balancing the countervailing interests that have been brought into play by SNHS's request for Hughes' communications with Attorney Gordon and Hughes' assertion of the attorney-client privilege. Because SNHS has failed to satisfy the requirements of LR 37.1(a), its motion to compel is denied, but without prejudice.

On the chance that SNHS might be inclined to file a second motion to compel the production of Hughes' communications with the ADA, the court makes the following observations for the benefit of the parties. First, notwithstanding both parties' apparent reliance on New Hampshire's law of privilege, subject-matter jurisdiction in this case is based upon 28 U.S.C. § 1331, and "[q]uestions of privilege in federal question cases are governed by federal law." Shea v. Mcgovern, Civ. No. 1:08-12148-MLW, 2011 WL 322652, at *5 (D. Mass. Jan. 31, 2011) (citing Fed. R. Evid. 501). Moreover, "[a] federal privilege applies even if a federal civil action combines state and federal law claims and the asserted privilege is relevant to both claims." Shea, 2011 WL 322652, at *5 (citing Green v. Fulton, 157 F.R.D. 136, 139 (D. Me. 1994); Krolikowski v. Univ. of Mass., 150 F. Supp. 2d 246, 248 (D. Mass. 2001); Williams v.

8

City of Boston, 213 F.R.D. 99, 100 (D. Mass. 2003).  Because this court's jurisdiction over Hughes' claims rests upon 28 U.S.C. § 1331, federal privilege law applies.  While it may have been permissible for the court to have applied New Hampshire privilege law if it had reached the merits of the parties' dispute over privilege, see Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 23 (1st Cir. 2011) (citations omitted), the court's denial of SNHS's motion to compel gives the parties the opportunity to frame their arguments under the correct law from the start, in the event that SNHS opts to continue its pursuit of Hughes' communications with the ADA.

Having established the applicable substantive law of privilege, the court further notes that under federal common law, the attorney-client privilege protects both communications to attorneys and communications from them.  With respect to the former,

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Mr. S., 662 F.3d at 71 (quoting Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002); citing 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)).  As the Mr. S. court went

on to explain, "[a] failure to satisfy any one of the enumerated elements defeats the claim of privilege." 662 F.3d at 71 (citing United States v. Wilson, 798 F.2d 509, 512-13 (1st Cir. 1986)). With respect to documents prepared by attorneys,

> [t]he privilege . . . protects from disclosure documents provided by an attorney if the party asserting the privilege shows:
>
> > (1) that he was or sought to be a client of [the attorney];
> >
> > (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived.

Maine v. U.S. Dept. of Interior, 298 F.3d 60, 71 (1st Cir. 2002) (quoting United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 27-28 (1st Cir. 1989); citing Wilson, 798 F.2d at 512).

The court concludes with a final observation. Even without the benefit of an adequate record, it seems difficult to imagine that Hughes' communications with Attorney Gordon would not qualify for the privilege. The federal common law of privilege, as formulated by the First Circuit, does not appear to require, as a sine qua non, a formal attorney-client relationship of the sort disclaimed by the ADA website. See Mr. S., 662 F.3d at 71 (listing eight elements required to establish privilege).

In any event, it is up to SNHS to decide whether it still wishes to attempt to acquire the communications between Hughes and her ADA legal advocate. If SNHS presses forward, and deems it necessary to return to this court with a second motion to compel, it should bear in mind the requirements of Rule 37(a)(1) and LR 37.1(a). Likewise, in response to any request for those communications from SNHS, Hughes should bear in mind the requirements of Rule 26(b)(5)(A).

### Conclusion

For the reasons detailed above, SNHS's motion to compel, document no. 22, is denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

October 25, 2012

cc: Simon Dixon, Esq.
    Edward M. Kaplan, Esq.
    Christopher James Pyles, Esq.