UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Patricia Hughes,
    Plaintiff

    v.                                    Case No. 11-cv-516-SM
                                          Opinion No. 2012 DNH 196
Southern New Hampshire Services, Inc.,
    Defendant


### O R D E R

Plaintiff, Patricia Hughes, brings this action against her former employer, Southern New Hampshire Services, Inc. ("SNHS"), seeking damages for alleged acts of discrimination.  More specifically, she says SNHS violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate her disability: type 1 diabetes.  She also advances numerous claims under state statutory and common law.  SNHS moves for summary judgment, asserting that there are no genuinely disputed material facts and claiming it is entitled to judgment as a matter of law.  That motion is granted in part, and denied in part.


### Standard of Review

When ruling on a motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115

(1st Cir. 1990).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party.  See generally Fed. R. Civ. P. 56(c).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, unsupported conclusions, and mere speculation.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).  See also Scott v. Harris, 550 U.S. 372, 380 (2007).

**Background**

SNHS was established in 1965 and serves as the Community Action Partnership for Hillsborough County, under the Economic Opportunity Act of 1964.  It operates pre-school programs and child care centers, serving approximately 30 New Hampshire communities, and is subject to the Federal Head Start Performance Standards and the New Hampshire Child Care Program Licensing Rules.

In September of 2007, SNHS hired Hughes as a preschool teacher in the Silver One classroom, in Manchester, New Hampshire.  Hughes suffers from type 1 diabetes, and requires a strict diet and insulin injections 15 minutes prior to any meals. She also requires insulin testing five to eight times each day. Nevertheless, as part of the hiring process, Hughes completed a disclosure form for new employees, in which she certified that she did not need any special accommodations to perform the position for which she was hired.  See New Employee Information Form (document no. 15-8).

Hughes's claims against SNHS center on her special dietary needs.  Consequently, of particular relevance to this proceeding are those federal regulations and Head Start programming guidelines governing the manner in which children and their

teachers participate in mealtime interactions.  For example, the
Head Start programming guidelines require teachers to "set good
examples by demonstrating a positive attitude toward all foods
served."  Head Start Programming Guidelines at 111, Exhibit 2 to
Defendant's Memorandum (document no. 15-4).  Pertinent federal
regulations require that "all toddlers and preschool children and
assigned classroom staff, including volunteers, eat together
family style and share the same menu to the extent possible."  45
C.F.R. § 1304.23(c)(4).  Those regulations also require SNHS to
comply with "all applicable Federal, State, Tribal, and local
food safety and sanitation laws, including those related to the
storage, preparation and service of food and the health of food
handlers."  Id. at § 1304.23(e)(1).  Given those regulations and
guidelines, and to avoid safety, allergy, and sanitation
problems, SNHS says it does not allow "outside food" - that is,
food not prepared in its kitchens - to be brought into the
classrooms or consumed in front of the children during their
mealtimes.

Hughes claims that, because she suffers from type 1
diabetes, she is disabled within the ADA's meaning, and,
therefore, entitled to reasonable accommodations.  She says SNHS
violated the ADA when, first, it denied her requests for
reasonable accommodations and, again, when it terminated her

employment in retaliation for having made such requests.  She
also advances several state law claims of unlawful
discrimination, retaliation, wrongful termination, and
intentional infliction of emotional distress.


## Discussion

Turning first to Hughes's federal claims, she advances three
distinct causes of action.  First, she says SNHS intentionally
discriminated against her on the basis of her disability and
unlawfully terminated her employment (count 5).  Next, she says
SNHS failed to reasonably accommodate her disability (count 6).
And, finally, she claims SNHS unlawfully retaliated against her
(by terminating her employment) after she requested reasonable
accommodations for that disability (count 7).


With regard to her "failure to accommodate" claim, Hughes
complains that, during the children's lunch break, she was not
permitted to eat meals that she had prepared at home.  She claims
to have "made two requests for accommodation during her
employment."  Plaintiff's memorandum (document no. 19-1) at 4.
In January of 2008, Hughes says she "first requested to bring her
own meals from home into the classroom, consistent with a meal
plan prescribed by her doctor."  Id.  But, she never provided any
such medically prescribed meal plan, and she claims "management

responded that no outside food should be brought into the classroom." Id.  She says, "[i]n the alternative, plaintiff requested that defendant's kitchen prepare low carbohydrate meals, which would not be considered outside food." Id.  But, she claims SNHS responded by saying that although it accommodates special dietary needs of the children, it does not prepare special meals for its teachers.  Id. at 5.

As to her retaliation and wrongful termination claims under the ADA, Hughes asserts that a day or two after she made her second request for accommodation from SNHS, she was fired.  She says there was a direct causal connection between her requests for accommodation and SNHS's decision to fire her, and claims that decision amounted to unlawful, disability-based discrimination.

I.  <u>The ADA and Diabetes</u>.

SNHS's first line of defense to Hughes's ADA claims is straightforward: because her type 1 diabetes is well-controlled through medication and diet, it does not "substantially limit" a major life activity (i.e., eating).  Accordingly, says SNHS, Hughes is not disabled within the meaning of the ADA.  On this record and given the parties limited briefing of the issue, the court cannot agree.

6

The ADA prohibits covered employers from discriminating against qualified individuals with a disability.  42 U.S.C. § 12112(a).  A person is "disabled" under the ADA if he or she suffers from a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  Id. at § 12111(8).  Under the ADA, unlawful discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . the accommodation would impose an undue hardship on the operation of the business."  Id. at § 12112(b)(5)(A).

In 2008, the ADA Amendments Act altered several provisions of the ADA.  One of the goals of those amendments was to "reject the requirement enunciated by the Supreme Court in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) and its companion cases that whether an impairment substantially limits a major life activity is to be determined with reference to the ameliorative effects of mitigating measures."  See Pub.L. No. 110-325, sec. 2(b)(2), 122 Stat. 3553 (emphasis supplied)

7

(<u>codified at</u> 42 U.S.C. § 12102(4)(E) (2008)).  Consequently, "the question of whether an individual's impairment is a disability under the ADA [no longer] demand[s] extensive analysis."  <u>Id</u>.

Consistent with those statutory amendments, the relevant regulations now provide that:

> Applying the principles set forth in [this section], the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. . . ..
>
> For example, applying the principles set forth [in this section], <u>it should easily be concluded that</u> the following types of impairments will, at a minimum, substantially limit the major life activities indicated: . . . <u>diabetes substantially limits endocrine function</u>; . . ..

29 C.F.R. § 1630.2(j)(3) (emphasis supplied).

As noted above, SNHS's assertion that Hughes is not disabled is based entirely on "reference to the ameliorative effects of mitigating measures" she takes - that is, a restricted diet and insulin injections.  Plainly, however, that approach was abrogated by the recent amendments to the ADA.  42 U.S.C. § 12102(4)(E)(ii).

The amendments to the ADA went into effect on January 1, 2009 - at approximately the midpoint of Hughes's employment at SNHS.  But, like most courts that have addressed the issue, the Court of Appeals for the First Circuit has concluded that the amendments are not retroactive.  <u>Carreras v. Sajo, Garcia & Partners</u>, 596 F.3d 25, 33 n.7 (1st Cir. 2010).  <u>See also</u> <u>Valle-Arce v. P.R. Ports Auth.</u>, 651 F.3d 190, 198 n. 5 (1st Cir. 2011) ("The ADA Amendments Act of 2008, which broadened the scope and protections of the ADA, does not apply to this case.  That act does not apply retroactively to conduct that occurred before its effective date of January 1, 2009.") (citation omitted).  Neither party has discussed those amendments to the ADA, nor has either addressed their effect on the court's determination of whether Hughes is, in fact, disabled under the ADA.[1]

So, for purposes of addressing defendant's motion for summary judgment, the court will assume that Hughes is disabled under the ADA and was, therefore, entitled to reasonable accommodations.

---

[1]     The judicial opinions on which SNHS relies, including <u>Carreras</u>, <u>supra</u>, and <u>Aponte-Navedo v. Nalco Chemical, Inc</u>. 848 F. Supp. 2d 171 (D.P.R. 2012), are of little persuasive value.  The courts in those cases specifically noted that the amendments did <u>not</u> apply because the conduct in question occurred prior to January 1, 2009.  Here, at least some of the conduct of which Hughes complains occurred after the amendments went into effect.

II.   <u>Failure to Accommodate</u>.

Unless an employer knows, or reasonably should know, that an accommodation is necessary, the employee must explicitly request one.

> An accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to plaintiff's disability.  The obligation is on the employee to provide sufficient information to put the employer on notice of the need for accommodation.  This means not only notice of a condition, but of a causal connection between the major life activity that is limited and the accommodation sought.

<u>Jones v. Nationwide Life Ins. Co.</u>, 696 F.3d 78, 89 (1st Cir. 2012) (citations and internal punctuation omitted).  And, of course, it is well-established that when an employee is entitled to a reasonable accommodation, she is not necessarily entitled to the accommodation of her choosing.  <u>See, e.g.</u>, <u>E.E.O.C. v. Sears Roebuck & Co.</u>, 417 F.3d 789, 802 (7th Cir. 2005) ("It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests."); <u>Trepka v. Bd. of Edu.</u>, 28 Fed. Appx. 455, 459 (6th Cir. 2002) ("The employer need not provide the accommodation that the employee requests or prefers. Instead, the employer retains the 'ultimate discretion' to choose another effective accommodation, even if less expensive or easier to provide.").

Here, Hughes signed a document at the start of her employment in which she represented that she did not require any special accommodations to perform the position for which she was hired.  See New Employee Information Form (document no. 15-8). It was, then, incumbent upon her to directly and specifically request an accommodation if one became necessary.  She claims to have requested two different accommodations, both of which were rejected.  First, she asked SNHS to allow her to prepare her own meals at home and then eat them with the children during their lunch break.  When that request was denied, she says she asked that the kitchen prepare low-carbohydrate meals for her.  That request was also denied.

But, says SNHS, it did reasonably accommodate Hughes's special eating and dietary needs: it permitted her to eat her meals - food that she had prepared at home - in the staff break room, apart from the children.  See, e.g., Deposition of Patricia Hughes (document no. 15-26) at 27-28, 59, 103, 108, 113.  And, as Hughes's own expert opined, that is precisely the type of "reasonable accommodation" that would be appropriate for someone with Hughes's medical condition.  Plaintiff's Answers to Interrogatories (document no. 15-27) at 17 ("Reasonable accommodations for the needs of a person with diabetes do not have to disrupt the entire work place.  Examples of such

11

reasonable accommodations could include providing her with a list
[of] known and suspected allergens with instructions to not bring
them to the workplace, <u>allowing her to eat her meal apart from</u>
<u>the children in the kitchen setting</u>, or having kitchen staff
prepare a suitable meal to her needs.") (emphasis supplied).

SNHS also points out that Hughes testified (and her expert
reported) that Hughes's co-workers were aware of her condition
and whenever she experienced hypoglycemic symptoms, her co-
workers covered for her and she was able to "go to the kitchen
and the classroom and do what [she] needed to do." Hughes
Deposition at 120. Hughes also testified that she always had
access to her glucose pills and testing equipment, she was never
prevented from performing whatever testing she felt was necessary
or appropriate, and she was never prevented from taking whatever
remedial measures she needed. <u>See, e.g.</u>, <u>Id</u>. at 120, 137.

Given that SNHS allowed Hughes to eat meals that she had
prepared for herself (rather than those prepared for staff and
children in the school's kitchen) and allowed her to take those
meals apart from the children, in the staff break room (precisely
one of the accommodations recommended by Hughes's own expert), it
appears that the real substance of her failure-to-accommodate
claim is this: during the children's lunch break, SNHS required

12

Hughes to sit with the children, expected that she would take servings of the food that had been prepared for the children, and did not allow her to eat a special meal that she had prepared for herself at home during the childrens' mealtime.

As noted above, however, Hughes was not required to eat any of the food prepared for the children; she was merely required to present a "positive attitude" toward that food. But, she claims that requiring her to sit with the children and then "putting high carbohydrate foods in front of her was like putting beer in front of an alcoholic." Plaintiff's Objection at 13. See also Id. at 15 ("Hughes informed defendant's management continuously of her diabetic condition which prevented her from eating the meals high in carbohydrates. She also informed Jessica Emond and Carrie Marshall, Education Disabilities Managers, that she was a diabetic and could not participate in the meals served."); Hughes Deposition at 108 (acknowledging that "the issue from [Hughes's] perspective is that [she] was not allowed to bring outside food into the classroom.").

While Hughes may have found that sitting with the children during their lunch break was inconvenient or even unpleasant, requiring her to do so did not run afoul of the ADA. The accommodations SNHS afforded Hughes were entirely reasonable.

13

Accordingly, the record evidence supports SNHS's claim that, as a matter of law, it provided Hughes with all to which she was entitled under the ADA: a reasonable accommodation of her type 1 diabetes (though not necessarily the accommodation she would have preferred).  SNHS is, then, entitled to summary judgment on count 6 of Hughes's complaint.


III. <u>Unlawful Retaliation</u>.

As to Hughes's assertions of unlawful termination (count 5) and retaliation (count 7) under the ADA, the record does not support such claims.


The ADA's retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a).  For purposes of that provision, seeking an accommodation is protected conduct.  <u>Freadman v. Metro. Prop. & Cas. Ins. Co.</u>, 484 F.3d 91, 106 (1st Cir. 2007).  To establish a retaliation claim under the ADA, Hughes "must show that: (1) she was engaged in protected conduct; (2) suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse action."  <u>Colon-Fontanez v. Municipality of San Juan</u>, 660 F.3d 17, 36 (1st Cir. 2011).  If Hughes is able to make out a prima facie case of unlawful

14

retaliation, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. The employer's burden is one of production, not persuasion." Carreras, 596 F.3d at 36 (citations and internal punctuation omitted).

Assuming Hughes has made out a prima facie case, SNHS has responded with a non-discriminatory reason for terminating her employment: "recurring performance issues." Affidavit of Susan Will, Exhibit 1 to Defendant's Memorandum (document no. 15-3) at para. 9. See also Exhibits 9 through 20 (Hughes's performance appraisals and Supervision Summary Sheets which, although positive in many respects, document ongoing issues with improper distribution of classroom materials, trouble separating personal and work issues, and problems relating to interacting with the children in the manner prescribed by SNHS). So, the burden reverts to Hughes to point to record evidence sufficient to permit a reasonable jury to conclude that SNHS' proffered explanation is merely a pretext for unlawful discrimination and that her employment was actually terminated in retaliation for having sought reasonable accommodation of her disability. She has failed to do so.

15

The evidence upon which Hughes relies is: (1) the temporal proximity between her meeting with human resources on June 9, and her termination two days later; and (2) a vague suggestion that "Defendant's assertion that Hughes' termination was discussed [prior to her meeting with human resources] is suspicious at best."  Plaintiff's memorandum at 19-20.  While temporal proximity between protected conduct and an adverse employment action can give rise to an inference of causation that is sufficient to make out a prima facie case of discrimination, it is not, without more, sufficient in this case to permit a trier-of-fact to conclude that Hughes was the victim of unlawful discrimination.  See, e.g., Alvarado v. Donahoe, 687 F.3d 453, 464 (1st Cir. 2012) ("As the [employer] has articulated a legitimate reason for [its] decision to suspend Alvarado, Alvarado bears the ultimate burden to show that this reason is in fact a pretext and that the job action was the result of retaliatory animus.  With the exception of underscoring that he received his suspension a week after filing EEO charges against Ríos, Alvarado does not present any arguments or evidence that would allow us to conclude that his employer's stated legitimate reason masked retaliatory motives.  Accordingly, Alvarado's reliance on any temporal proximity between his January 2008 EEO activity and his suspension is unavailing.").

Moreover, Hughes's "suspicion" that she was terminated in
retaliation for having sought reasonable accommodations is just
that - a suspicion.  In response to that claim, SNHS has
submitted an affidavit from Susan Wall, stating that the decision
to terminate Hughes's employment was made <u>before</u> Hughes went to
Human Resources to speak with Mr. Tabory about accommodations
and, therefore, that decision had nothing to do with Hughes's
request.  Will Affidavit at para. 11.  Mr. Tabory confirmed that
point, testifying that, "management had come to me prior to
[Hughes's request for accommodation] and [stated] that they were
not satisfied with her performance and did not intend to invite
her back."  Deposition of Michael E. Tabory, Exhibit 26 to
defendant's memorandum (document no. 15-28) at 53.  <u>See also Id</u>.
at 59.

Plaintiff, on the other hand, has failed to point to any
evidence suggesting that there is a genuine dispute about whether
SNHS decided to terminate her employment <u>prior</u> to her meeting
with human resources.  Given the factual record presented, the
court is constrained to conclude that Hughes has not identified
(and cannot identify) sufficient evidence to suggest that there
are any genuinely disputed material facts on the question of
causality - that is, whether there was a causal link between her
request for accommodations and her discharge.  <u>See generally</u>

17

<u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 272 (2001)
("Employers need not suspend previously planned transfers upon
discovering that a Title VII suit has been filed, and their
proceeding along lines previously contemplated, though not yet
definitively determined, is no evidence whatever of causality.").
<u>See also</u> <u>Mariani-Colon v. Dep't of Homeland Sec.</u>, 511 F.3d 216,
224 (1st Cir. 2007) ("Appellant offers no additional evidence to
show that the reasons the government offered for his termination
are pretextual.  While appellant engages in much speculation and
conjecture, a plaintiff cannot defeat summary judgment by relying
on conclusory allegations, or rank speculation.") (citation and
internal punctuation omitted).

    Hughes has not rebutted SNHS's proffered legitimate reasons
for having fired her, nor has she established a causal connection
between her protected conduct and her discharge.  She has also
failed to demonstrate that there are any genuinely disputed
material facts relative to that issue.  At the same time, SNHS
has shown that it is entitled to judgment as a matter of law on
Hughes's claims of unlawful discrimination and retaliation
(counts 5 and 7).

IV.   <u>Hughes's State Law Claims</u>.

Having concluded that defendants are entitled to judgment as a matter of law as to Hughes's three federal claims under the ADA, the court must next determine whether it is appropriate to exercise supplemental jurisdiction over her state law claims of unlawful discrimination, retaliation, wrongful termination, and intentional infliction of emotional distress.  It declines to do so.  <u>See generally</u> 28 U.S.C. § 1367.

Section 1367 provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   <u>the district court has dismissed all claims over which it has original jurisdiction</u>, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).  To assist district courts, the Court of Appeals for the First Circuit has identified the following additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial

economy; (3) convenience; and (4) comity.  See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  With regard to principles of fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).

Given that the court has dismissed all of the federal claims in Hughes's complaint, and taking into consideration the factors identified in Camelio, the court declines to exercise supplemental jurisdiction over Hughes's state law claims.

### Conclusion

For the forgoing reasons, defendant's motion for summary judgment (document no. 15) is granted in part, and denied in part.  To the extent it seeks judgment as a matter of law on plaintiff's claims under the American's with Disabilities Act (counts 5, 6, and 7), that motion is granted.  In all other respects, however, it is denied.

20

Because this matter was removed from state court, the Clerk of Court shall remand plaintiff's state law claims to the Hillsborough County North (New Hampshire) Superior Court, and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 26, 2012

cc:   Simon Dixon, Esq.
      Edward M. Kaplan, Esq.
      Christopher J. Pyles, Esq.